RALLI–CONEY, INC., et al.,
Plaintiffs-Appellees,

v.

Derryal GATES et al.,
Defendants-Appellants.

No. 75–2688
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

March 12, 1976.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

R. L. Holladay, P. J. Townsend, Jr., Drew, Miss., for defendants-appellants.

Jerry H. Blount, Jackson, Miss., for D. Gates.

Jack F. Dunbar, William Dean Stark, Clarksdale, Miss., for plaintiffs-appellees.

Before BROWN, Chief Judge, GODBOLD and GEE, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This is a diversity case and once again the Fifth Circuit has been compelled to ride on the winding and often perilous tracks of the *Erie* Railroad. Fortunately, our engineer, the trial court, with an eye to the rather sparse Mississippi precedent and to the Uniform Commercial Code as adopted by Mississippi and a firm hand on the ever present throttle of generally accepted principles of contract law has made our trip a safe one and accordingly we affirm.

This case involves a standard "forward" contract for the sale of cotton not yet grown. Typically, three parties are involved in the transaction, the farmer, a broker, and one or more cotton merchants. Usually the farmer enters into a contract with the broker for the sale of cotton grown on a specified acreage and the broker in turn locates a cotton merchant interested in purchasing the cotton and thereafter negotiates a sale of the cotton which is usually formalized by an agreement between the farmer and the merchant. However, in this scenario we are confronted with another player to fill out our cast of characters, a lessor of the farm land who claims an interest in the crop.

Gates (farmer-lessee) entered into an oral contract to lease the subject property from Dr. Rotenberry (lessor) and the rent was to be one-fourth of his cotton crop in kind.[1] Thereafter, on a date no earlier than November 13, 1970[2] Gates entered into a marketing agreement with Staple Cotton Cooperative Association, a broker, whose business it was to effectuate sales between farmers and cotton merchants of cotton to be produced in the future. On or about March 7, 1973, Gates entered into a contract with Ralli-Coney, Inc., a cotton merchant, through its agent Staple, for the sale of 300 acres of cotton to be grown on the land which he leased from Dr. Rotenberry. Similarly, on May 4, 1973 Gates entered into another contract to sell the cotton produced on 500 acres of the same land to Dunavant Enterprises, Inc., another cotton merchant.

Due to heavy rains causing flood conditions in the area where Gates' leased

---

1. Since Dr. Rotenberry has died during the pendency of this litigation the executor of his estate, William Lamar Hooker, has been substituted as a party defendant.

2. It was impossible for this Court or the District Court to determine the exact date on which Gates entered into the marketing agreement with Staple Cotton Cooperative Association because of the poor quality of the photo copy of this agreement. However, since only the last digit of the year is illegible it is possible to determine that the contract was executed no earlier than November 13, 1970.

land was located he was only able to plant 717 acres rather than the expected 1,066 acres. As a result he was unable to fulfill the obligations described above and accordingly made an equitable distribution of the cotton produced among the two cotton merchants and the lessor, pursuant to § 75–2–617 of the Mississippi Code of 1972. Thus, this law suit is brought by the cotton merchants against Gates and Dr. Rotenberry's estate to recover the whole crop on the premise that the 800 acres for which they contracted exceeded the 717 acres which were productive and because of this they were entitled to all the cotton which was produced.

On this appeal the defendants challenge the trial court's order granting a partial summary judgment on the issue of liability in favor of the plaintiffs, cotton merchants.[3] Three issues are presented: (i) Was partial summary judgment inappropriate because there existed a factual dispute taking the form of parol evidence as to the meaning of the contracts between Gates and the cotton merchants, (ii) Did the trial court err in overruling defendant's motion for J. N. O. V. or new trial because Dunavant Enterprises, Inc., had an operation which was localized in Mississippi and did not qualify to do business in Mississippi as required by Mississippi law and thus could not enforce this contract in Mississippi, (iii) Was Staple Cotton Cooperative Association, a Mississippi corporation, an indispensable party to this law suit whose presence therein destroyed diversity jurisdiction?

With respect to the first issue we are under the satrapy of F.R.C.P. 56(c) which specifies that a summary judgment is appropriate only if the trial court determines "that there is no genuine issue as to any *material* fact and that the moving party is entitled to a judg-

ment as a matter of law". (Emphasis supplied). *See also Shahid v. Gulf Power Company,* 5 Cir., 1961, 291 F.2d 422, 423; 6 Moore's Federal Practice ¶ 56.-01[1] *et seq.* (2d ed. 1975).

We believe the trial judge acted properly in finding that there was no material factual dispute. The language of the contracts was clear and under Mississippi law parol evidence is inadmissible to contradict, vary, alter, add to, or detract from, the written instrument when it is clear on its face. *See, e. g., Allen v. Allen,* Miss.Sup.Ct., 1936, 175 Miss. 735, 168 So. 658; *accord, Paoli v. Anderson,* Miss.Sup.Ct., 1968, 208 So.2d 167; *Fuqua v. Mills,* 1954, 221 Miss. 436, 73 So.2d 113.

The defendants rely on *Dunavant Enterprises, Inc. v. Ford,* Miss.Sup.Ct., 1974, 294 So.2d 788, wherein the Court allowed parol evidence to explain which acreage was to be covered under a similar forward contract. However, in the case at hand there is no ambiguity as there was in *Ford* because the language of both contracts clearly provides that the contracts were for the sale of *all* cotton produced on the accurately described acreage. If Gates had wished to exempt that one-fourth of the cotton which was already committed to Dr. Rotenberry he should have put that limitation in the contracts, but parol evidence which establishes this limitation is plainly contradictory to the terms of the written contracts and barred from admission into evidence by the Mississippi parol evidence rule. In this posture, the trial court correctly held that this factual dispute was immaterial to the determination of the legal rights and obligations under the contracts.

Moreover, we affirm the trial court's decision that the plaintiffs, cotton merchants, were entitled to judgment as

---

**3.** Liability was established as permitted by F.R.C.P. 56(d) against the defendants by the Court's order of November 22, 1974 (App. 89–90). Thereafter, on April 23, 1975 the Court entered a final judgment (App. 90–91) and this appeal is taken from that order. Since appeal was not taken until entry of the final judgment there is no necessity in this case that the trial judge certify the partial summary judgment on liability for immediate appeal in accordance with F.R.C.P. 54(b).

a matter of law. When read together §§ 75–2–102, 105, 107 of the Mississippi Code of 1972 indicate that forward contracts for the sale of yet to be grown cotton fall within the Mississippi codification of the Uniform Commercial Code. Section 75–2–402(1) of the Code subordinates the rights of the seller's unsecured creditors in the subject matter to those of the buyer.[4] Thus, we hold that the cotton merchants are entitled to the whole crop and the lessor's remedies, if any, are against the lessee, but since this issue is not before us on this appeal we express no opinion as to the legal obligations of these parties.

■ We need not dwell on the defendants' claim that *Dunavant* cannot enforce this contract in Mississippi courts because it has failed to procure a certificate of authority to do business in the state as required by Section 79–3–21 of the Mississippi Code of 1972. In rejecting this contention we rely on the Supreme Court's recent decision in *Allenberg Cotton Co., Inc. v. Pittman,* 1974, 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 which also concerned forward contracts for cotton produced in Mississippi. In holding that cotton merchants who had failed to qualify to do business in Mississippi could nevertheless enforce sales contracts in the state, the Court stressed that the cotton exchange business involved an intricate interstate marketing mechanism of which one primary component was the forward contract. Thus, to allow state statutes to impede this nation-wide marketing system would place a heavy burden on interstate commerce in contravention of the commerce clause of the United States Constitution.

The mere fact that Dunavant's business involved some intrastate operations is inconsequential because the cotton exchange business was predominantly interstate in nature and was unquestionably part of the interstate marketing mechanism which the Supreme Court sought to protect in *Allenberg. See also Dahnke-Walker Milling Co. v. Bondurant,* 1921, 257 U.S. 282, 42 S.Ct. 106, 66 L.Ed. 239.

■ Finally, we hold that the trial court acted within the bounds of sound discretion and within his authority under Rule 21 F.R.C.P.[5] in dismissing the broker, Staple Cotton Cooperative Association to preserve diversity jurisdiction. Rule 19(b) establishes four tests to judge whether a party is indispensable to the law suit. (i) To what extent will a judgment entered in the party's absence be prejudicial to him? Although Staple technically had legal title to the cotton at the time the forward contracts were entered, Staple had no performance obligations under the contracts and does not at this time assert any rights in the cotton or the proceeds of the sale thereof. Thus, an adverse judgment would not affect Staple's interest to any significant degree. *See also* 3A Moore's Federal Practice ¶ 19.07–2[1] (2d ed. 1975). (ii) The extent to which the judgment can be tailored to minimize prejudice to the absent party. This factor is inapplicable here because no significant prejudice to Staple exists in the first place. (iii) Will the judgment entered in the party's absence be adequate? Most assuredly the persons who are withholding the cotton are Gates and Dr. Rotenberry's estate and a judgment bringing them to toll would be sufficient to solve the plaintiffs' problems. *See also* 3A Moore's Federal Practice ¶ 19.07–2[3] (2d ed. 1975). (iv) Will the plaintiffs have an adequate remedy if the action is dismissed for nonjoinder? Certainly the plaintiffs could refile their action in state court but the interest of judicial

---

4. Under Mississippi law, legal title to the crops is vested in the lessee, Gates, subject to the landlord's lien for unpaid rent, *Lewis v. Latham,* 1955, 224 Miss. 107, 79 So.2d 811, which could be asserted only against the lessee absent some valid security interest in favor of the lessor.

5. Rule 21 F.R.C.P. provides in pertinent part: Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just.

efficiency and an expeditious resolution of this dispute seem to carry the day in the absence of any significant prejudice to the rights of Staple.

Affirmed.