Doris GILMORE, et al.,
Plaintiffs-Appellants,

v.

WATERMAN STEAMSHIP
CORPORATION, et al.,
Defendants-Appellees.

No. 85–3207.

United States Court of Appeals,
Fifth Circuit.

June 4, 1986.

Dean A. Sutherland, Preston G. Sutherland, New Orleans, La., for plaintiffs-appellants.

Robert T. Lemon, II, New Orleans, La., for Allied Intern.

Wood Brown, III, New Orleans, La., for Masonite Corp.

George M. Strickler, Wolf, Popper, Ross, New Orleans, La., Michael P. Fuchs, Martin

Popper, New York City, Ann Woolhandler, Michael Collins, New Orleans, La., for V/O Exportles.

Before GOLDBERG, WILLIAMS and DAVIS, Circuit Judges.

## OPINION

W. EUGENE DAVIS, Circuit Judge:

Joe Evan Gilmore, an employee of Ryan Walsh Stevedoring, was killed when a bundle of hardboard from the S/S ARTHUR MIDDLETON fell on him during discharge of cargo from that vessel. The decedent's spouse filed suit individually and on behalf of the decedent's two stepchildren against the Waterman Steamship Corporation, owner of the S/S ARTHUR MIDDLETON (now in bankruptcy and not a part of this appeal); V/O Exportles, the Soviet seller of the hardboard; V/O Sojuzveneshtrans (Sojo), a Soviet freight forwarding agent who arranged for the shipment of the cargo and provided insurance during the voyage; and Allied International, Inc. (Allied), a Massachusetts corporation that purchased the hardboard. Jurisdiction is asserted over Exportles and Sojo, entities owned by the U.S.S.R., under the Foreign Sovereign Immunities Act (FSIA). Plaintiff asserts diversity and admiralty jurisdiction over Allied. After a bench trial, the district court dismissed the suit after finding that the defendants were not negligent and that the hardboard and its packaging were not defective and did not present an unreasonable risk of harm. Plaintiff contends on appeal that the district court's factual findings supporting its determination that defendants were not culpable are clearly erroneous and that the district court erred in granting defendants' motion to strike a jury trial. We affirm.

### I.

The cargo in question, manufactured in the Soviet Union, consisted of bundles of masonite hardboard. Each bundle weighed about 1900 pounds and consisted of one hundred sheets of the hardboard strapped together with metal bands on a wooden pallet. This method of crating was standard for the industry and had been used for ten years in shipping this type of cargo to the United States. The bundles were loaded by a Soviet stevedore into the hold of the S/S ARTHUR MIDDLETON for shipment to various ports in the United States. After the vessel was loaded Waterman issued clean bills of lading, indicating that the vessel's officers observed no apparent damage to the cargo or its packaging when it was loaded aboard the vessel. Before reaching New Orleans, the vessel unloaded, without incident, a portion of its cargo at two United States ports; only minor damage was discovered at these ports, which was considered usual for a trans-Atlantic shipment. When the ship reached New Orleans, Ryan Walsh Stevedoring, the decedent's employer, was hired to unload the vessel. The longshoremen first unloaded the number 2 hold without discovering unexpected damage. When the longshoremen approached the number 4 hold, they discovered that the manner in which the bundles were stowed prevented them from using a forklift to bring the bundles into the open where they could be hoisted ashore. As a result, the crew found it necessary to "snake out" the first few bundles to make room for a forklift in the hold, after which they planned to revert to the usual unloading procedure. In snaking out a bundle, the crew placed a rope sling around one end of a bundle and attached the sling to the ship's aft winch; the bundle was then dragged toward the center of the hatch. The rope was then reslung around both ends of the bundle so it could be lifted from the hold onto the dock.

The accident occurred when one of these bundles was being lifted out of the number 4 hold. Immediately after the bundle in question cleared the top of the hatch, the rope sling slipped off one end of the bundle and the hardboard fell back into the hold. Mr. Gilmore was standing under the load and was crushed by the falling hardboard. The Occupational Safety and Health Re-

view Commission later issued a citation to Ryan Walsh for not safely slinging the load before it was hoisted.

The district court found that the accident was caused by the joint negligence of the Soviet stevedore which was not sued and decedent's employer, Ryan Walsh, which enjoyed immunity from tort liability. The district court found that the cargo had been improperly stowed when loaded in USSR; it found that the Ryan Walsh longshoremen had negligently damaged the pallets when they dragged the bundles from the wing of the hold to a position near the center of the hatch so they could be lifted out of the hold; the court also found Ryan Walsh negligent in the manner in which its longshoremen slung and lifted the bundle out of the hold. The district court also found the crating as designed and manufactured could withstand the ordinary rigors of shipping, loading, and unloading; thus it was reasonably fit for its intended purpose and did not present an unreasonable risk of harm. Based on these findings, the district court concluded that none of the defendants before it was liable under either a negligence or products liability theory.

■ Appellant argues that the district court's finding that the crating was reasonably adequate and safe is clearly erroneous. The testimony of Charles Scroggins, an expert called by Waterman, supports Mrs. Gilmore's position on this issue. At least two other witnesses, however, Joseph Mandel and Lawrence Mackey, disagreed with Mr. Scroggins and the district court did not abuse its discretion in rejecting Mr. Scroggins' opinion. Appellant also argues that the district judge erred in finding that Mr. Gilmore's fellow employees allowed the bundle to strike the coaming of the hatch. The evidence was conflicting as to whether the load struck the coaming before it fell, but again the district judge who heard the witnesses is in a much better position than us to resolve this conflicting testimony. *Anderson v. City of Bessemer,* —— U.S. ——, ——, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518, 528 (1985). The record amply supports the district court's findings, which are not clearly erroneous. Fed.R.Civ.P. 52(a).

## II.

Appellant next contends that the district court erred in granting defendants' motion to strike the jury. Appellant asserts jurisdiction over Exportles and Sojo under the FSIA, which provides for trial without a jury. 28 U.S.C. § 1330. Mrs. Gilmore concedes that she is not entitled to a jury against these foreign entities, but argues that she is entitled to a jury trial against Allied, against whom she asserts both admiralty and diversity jurisdiction. The district court, relying on *T.N.T. Marine Service, Inc. v. Weaver Shipyard and Drydock, Inc.,* 702 F.2d 585 (5th Cir.), *cert. denied,* 464 U.S. 847, 104 S.Ct. 151, 78 L.Ed.2d 141 (1983), concluded that by asserting both admiralty and diversity jurisdiction, appellant made an election under Fed. R.Civ.P. 9(h) to proceed in admiralty without a jury. In *T.N.T.,* the plaintiff alleged diversity jurisdiction but added, "this is also a suit for breach of maritime contract and for maritime tort." Although we stated that the preferable technique is to expressly invoke Rule 9(h), we held that "there is no right to a jury trial where the complaint contains a statement identifying the claim as an admiralty or maritime claim, even though diversity jurisdiction exists as well." 702 F.2d at 587. *See also Romero v. Bethlehem Steel Corp.,* 515 F.2d 1249 (5th Cir.1975).

■ Appellant's original complaint, as well as her first, second and third supplemental complaints, asserted both admiralty and diversity jurisdiction. The final pretrial order also alleged both jurisdictional bases. The jurisdictional allegations of Mrs. Gilmore are indistinguishable from those of the plaintiff in *T.N.T.* The district court correctly characterized this action as an admiralty case in which the plaintiff had no right to a jury trial.

AFFIRMED.