**Edward William FORBES, et al.**

v.

**A & P BOAT RENTALS, INC., et al.**

**Civ. A. No. 85–5786.**

United States District Court,
E.D. Louisiana.

June 20, 1988.

Joseph J. Weigand Jr., Weigand, Weigand & Meyer, Houma, La., for plaintiffs.

Richard S. Vale, Blue, Williams & Buckley, Metairie, La., for Twin Disc.

## OPINION

CHARLES SCHWARTZ, Jr., District Judge.

Trial in this matter was held on February 22–23, 1988 before the Court sitting with a jury. Having considered the verdict of the jury, the record, the memoranda and arguments of counsel, the evidence, and the applicable law, the Court rules as follows. To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as Conclusions of Law; to the extent any of the following Conclusions of Law constitute Findings of Fact, they are adopted as such.

This is a maritime products liability case. The primary issue is whether plaintiff is entitled to a jury. Because diversity jurisdiction exists and is alleged and because plaintiff makes no Rule 9(h) designation, the Court determines that plaintiff is entitled to a jury and that judgment should be

entered on the jury's verdict. To avoid re-trial from error, however, the Court also makes independent findings of fact and conclusions of law; the Court concurs in the jury's verdict of $200,000. Because no interrogatory was put to the jury on the issue of pre-judgment interest, the Court may not award such interest in this case.

## I.

On May 14, 1985, plaintiff Edward William Forbes was severely injured when a large clutch (engine transmission) manufactured by defendant Twin Disc, Inc. ("Twin Disc") fell on his hand as he was assisting a crane to remove the clutch from one of the vessels of his employer, A & P Boat Rentals, Inc. ("A & P").

Mr. and Mrs. Forbes, both Louisiana citizens, filed suit in this Court on December 18, 1985. Their complaint included a Jones Act and unseaworthiness claim against A & P, a Louisiana corporation, and a products liability claim against Twin Disc, a non-Louisiana corporation with its principal place of business in Wisconsin. Paragraph I of the complaint read as follows:

> Plaintiffs bring this claim under the Jones Act, the General Maritime Law and Article 2315 of the Louisiana Revised Civil Code and invokes [sic] the diversity jurisdiction of this court as the amount in controversy is in excess of $10,000.00 plus interest and costs.

The complaint demanded a jury. Twin Disc filed a cross-claim against A & P for contribution. Plaintiffs amended the complaint to add a negligence claim against Camcraft, Inc., the alleged company employing the crane operator lifting the clutch, and its insurer, National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union"). Plaintiffs did not pursue this added claim.[1]

Twice, A & P sought summary judgment on the ground that Mr. Forbes was a long-shoreman, and not a seaman. Because there was a genuine dispute of material fact, the Court denied the motions.

Just prior to the final pre-trial conference of February 11, 1988, plaintiffs made a (now shown to be successful) tactical decision to acknowledge that Mr. Forbes had the status of a longshoreman instead of a seaman and thus to dismiss their claims against A & P. Subsequently, National Union (as A & P's worker's compensation insurer) intervened to recover the benefits paid to Mr. Forbes under the LHWCA and entered a stipulation with plaintiffs *and* Twin Disc on its recovery from any award plaintiffs might obtain from Twin Disc, with plaintiffs and National Union entering into a lump sum settlement under section 8(i) of the LHWCA, 33 U.S.C. § 908(i).[2] At the beginning of trial, Twin Disc voluntarily dismissed its cross-claim against A & P, and Mrs. Forbes voluntarily dismissed her claims against Twin Disc.

By the time of the final pre-trial conference, the sole disputed claim remaining was Mr. Forbes' products liability claim against Twin Disc. The pre-trial order indicated: "This case is a jury trial as to all issues." The issue of a jury trial was not discussed at the conference.

After the conference, the Court questioned on its own initiative whether Mr. Forbes was still entitled to a jury on his remaining claim. In order to avoid a new trial for any reversible error the Court might make on the jury issue, the Court decided not only to use a jury as both parties envisioned, but also to make separate findings of fact and conclusions of law. By telephone the week before trial, the Court advised counsel of this decision, directed their attention to *Romero v. Bethlehem Steel Corp.*, 515 F.2d 1249 (5th Cir. 1975), *T.N.T. Marine Service, Inc. v. Weaver Shipyards & Dry Docks, Inc.*, 702 F.2d

---

**1.** The record reveals neither an answer from these two defendants nor any proof of service on either defendant. The Court adds that absolutely no evidence of any negligence by the crane operator was presented at trial.

**2.** Plaintiffs and National Union stipulated that if judgment is rendered in favor of plaintiff, then the intervenor is to be paid out of the judgment as follows: (1) nothing from the first $100,000 of recovery, (2) 25% of the second $100,000 of recovery, and (3) ⅓ of any amount above $200,-000 of recovery until full recovery of intervention of $114,746.

585 (5th Cir.) (per curiam), *cert. denied,* 464 U.S. 847, 104 S.Ct. 151, 78 L.Ed.2d 141 (1983), and *Gilmore v. Waterman Steamship Corp.,* 790 F.2d 1244 (5th Cir.1986), and asked them to submit proposed findings of fact and conclusions of law. Neither counsel objected to the Court's proposal.

At the beginning of trial, the Court asked Mr. Forbes' counsel whether Mr. Forbes was proceeding on the "law side" of the Court or instead on the "admiralty side." The ensuing colloquy, while admittedly not the model of articulation, evinced the desire of Mr. Forbes' counsel to maintain the jury and his recognition that, in all events, substantive maritime law would apply. Twin Disc's counsel remained silent during this colloquy. The trial then proceeded with the jury, which returned a verdict in Mr. Forbes' favor. The jury found Twin Disc to be 75% responsible and A & P to be 25% responsible and gave an award of $200,000 for Mr. Forbes' total damages.

After the trial, the Court directed counsel to submit post-trial memoranda on the issue whether the Court should enter judgment on the jury verdict or instead on findings of fact and conclusions of law made by the Court. For the first time, counsel for Twin Disc asserted that Mr. Forbes had made a Rule 9(h) designation and thus was not entitled to a jury. At the hearing on these memoranda, Mr. Forbes' counsel expressly moved to amend the complaint in order to make it explicit that the sole basis of jurisdiction asserted was diversity jurisdiction under 28 U.S.C. § 1332, made applicable by the saving-to-suitors clause in 28 U.S.C. § 1333(1).

## II.

### A.

■ In an Order and Reasons entered this week in *Truehart v. Blandon,* 684 F.Supp. 1368, the Court discusses the right to jury trials in admiralty. There, the defendants objected to the plaintiff's jury demand. As in the instant case, there were two possible bases for jurisdiction: diversity and admiralty. Because Mr. Truehart had brought not only *in personam* claims, but also an *in rem* claim that was perfected upon the vessel owner's appearance in the action as claimant to the vessel, the Court determined that Mr. Truehart had effectively made a Rule 9(h) designation that was irrevocable by the time of the pre-trial conference and thus was not entitled to a jury.

The instant matter differs significantly from *Truehart* because (1) Mr. Forbes has brought no *in rem* claim, (2) Twin Disc never objected to the use of the jury until after the trial was complete and after the Court had raised the issue, and (3) Mr. Forbes' complaint does not make a Rule 9(h) designation.

Of course, a plaintiff need not bring an *in rem* claim in order to be deemed to have made a Rule 9(h) designation. *See Gilmore,* 790 F.2d 1244. But in this instance, the Court cannot consider plaintiffs' original complaint to have made such a designation. *T.N.T.* and *Gilmore* illustrate the care that plaintiffs ought give the jurisdictional assertions in their complaints. Plaintiffs who assert both diversity and admiralty as bases of jurisdiction are held to have made effective Rule 9(h) designations, even if the words "Rule 9(h)" are never used. *See Gilmore,* 790 F.2d at 1246; *see also Durden v. Exxon Corp.,* 803 F.2d 845, 849 (5th Cir.1986) (citing *T.N.T.,* 702 F.2d at 587–88). In the instant matter, however, plaintiffs appear to have asserted diversity as the sole basis for jurisdiction.[3] The gratuitous reference in the complaint to "General Maritime Law" as the applicable

---

**3.** A & P is non-diverse from the Forbes. Had they not settled with A & P, they would nonetheless have still been entitled to a trial by jury as to all claims. *See Romero v. International Terminal Operating Co.,* 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959) (holding, among other things, that the naming of a non-diverse defendant in a maritime case would not violate the complete diversity requirement where the plaintiff had stated a Jones Act claim against the non-diverse defendant), *explained in Powell v. Offshore Navigation, Inc.,* 644 F.2d 1063, 1067 (5th Cir.), *cert. denied,* 454 U.S. 972, 102 S.Ct. 521, 70 L.Ed.2d 391 (1981).

Even if Twin Disc had established at trial that Mr. Forbes was not a seaman so that his claim

law to plaintiffs' claims is insufficient for the Court to presume plaintiffs to be proceeding on the admiralty side of the federal court.

To hold otherwise would not only demand exacting technicality in pleadings, but also ignore an important doctrine of admiralty law. While the distinction between an assertion of general maritime law as an applicable law and an assertion of admiralty and maritime jurisdiction as an applicable basis for jurisdiction may seem ethereal to those not versed in the peculiarities of admiralty, the Court must emphasize that the distinction is significant—it is an acknowledgment of admiralty's so-called "reverse-*Erie*" doctrine for the saving-to-suitors clause in 28 U.S.C. § 1333(1). As long as the assertion of admiralty jurisdiction is possible, then admiralty law controls over conflicting state law, whether the action is brought in diversity (as permitted by the saving-to-suitors clause) or in admiralty. G. Gilmore & C. Black, *The Law of Admiralty* 50–51 & n. 163 (2d ed. 1975); *see Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 211, 106 S.Ct. 2485, 2495, 91 L.Ed.2d 174 (1986). *See generally Southern Pacific Co. v. Jensen,* 244 U.S. 205, 215–16, 37 S.Ct. 524, 528–29, 61 L.Ed. 1086 (1917) (on uniformity in admiralty and maritime affairs). By asserting general maritime law as the applicable law, a plaintiff who brings his claims solely in diversity is able to alert the Court and the other parties that his diversity action is governed not by state law, but by federal maritime law.[4]

### B.

■ Even if the Court were to consider the reference in the complaint to general maritime law to amount to a Rule 9(h) designation, the Court would in any event hold plaintiff to have properly amended his complaint at the beginning of trial to delete any such Rule 9(h) designation.

Unlike the defendants in *Truehart,* Twin Disc never complained about plaintiffs' jury demand, either before or during trial. Indeed, like plaintiffs' counsel, Twin Disc's counsel prepared for a jury trial and directed his trial efforts primarily to the jury. Thus, Twin Disc cannot claim prejudice from any late amendment to the complaint on this issue.

■ When a complaint inadvertently includes a Rule 9(h) designation where diversity is an alternative basis of jurisdiction, the Court must freely permit the plaintiff to amend his complaint to assert diversity as the sole basis of jurisdiction, at least where the defendant is not be prejudiced thereby. *See* F.R.Civ.P. 15(a). Leave to amend may be requested in open court. *See* 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1485, at 422 (1971).

Because, as discussed above, the applicable law is the same whether plaintiffs proceed in diversity or in admiralty and because all counsel, at all times prior to and during trial, envisioned the trial as properly being a jury trial, Twin Disc was not prejudiced by any late jurisdictional amendment to the complaint, curing any previous Rule 9(h) designation.

### C.

■ Finally, even if the Court were to consider plaintiffs as having made a Rule 9(h) designation and as having never deleted such, the Court would still enter judgment on the jury's verdict. Prior to the

---

against A & P would have been solely under the LHWCA, the case would not come within the Fifth Circuit's holding in *Powell* (the naming of a non-diverse defendant in a maritime case violates the complete diversity requirement where the plaintiff's sole basis of jurisdiction against that defendant is federal admiralty jurisdiction, and thus the plaintiff is not entitled to a jury), for plaintiffs' settlement with A & P, a non-indispensable party for the claims against Twin Disc, cured the lack of complete diversity. *Anderson v. Moorer,* 372 F.2d 747, 750 n. 4 (5th Cir.1967); *see Aetna Casualty & Surety Co. v. Hillman,* 796

F.2d 770, 774 (5th Cir.1986) (citing *Ralli–Coney, Inc. v. Gates,* 528 F.2d 572, 575 (5th Cir.1976)); *see also* 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3606, at 413–14 & n. 11 (2d ed. 1984).

4. In this particular case, the notice was unnecessary inasmuch Louisiana state products liability law is, for all practical purposes as applied to this case, the same as federal maritime products liability law.

trial, the Court advised counsel it would use the jury as an advisory jury in the event that plaintiffs' jury demand was not a matter of right; no one objected. Thus, the Court would deem defendant's silence to have been "consent ... [to] a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right," *see* F.R.Civ.P. 39(c).

### III.

In the event that a reviewing authority determines that this Court erred in entering judgment on the jury's verdict, the Court now makes independent findings of fact and conclusions of law.

### A.

At issue in this case is a Model 514–C clutch (vessel engine transmission) manufactured by Twin Disc and used by A & P aboard one of its vessels. Screwed into the large cast-iron housing of the clutch, which weighs about 1200 pounds, are two steel eyebolt screws, which permit approximately twelve full turns and are designed to assist in lifting and moving the clutch. Like all A & P's clutches, the clutch at issue was constantly being exposed to salt water environments. The clutch's attached warning stated nothing about checking loose eyebolts before lifting. The service manual, which plaintiff had read, indicates nothing about checking the eyebolts for rust.

On May 14, 1985, plaintiff was employed by A & P as a mechanic assigned to repair engines on A & P's vessels. On that day, plaintiff was assigned to assist his coemployee Baldwin George in removing a Twin Disc clutch from the engine room in the M/V RAVEN, one of A & P's 110′ crewboats—a procedure plaintiff had done many times before.

In order to prepare the clutch for removal from the vessel, the two men ran a chain through the two eyebolts; the chain was attached to a crane, which did the actual lifting. As the crane lifted the clutch off the floor, the two had to guide the clutch up through the hole between the engine room and the deck top. When the clutch was about seven feet above the floor, one of the two eyebolts suddenly came out of the clutch housing. The clutch then dropped and pinned plaintiff's right hand against pipes in the engine room.

Tendons were injured, and bone was punctured. Needless to say, the accident was painful. Plaintiff underwent two operations on his hand and is still taking pain medication for his hand, with which he still has trouble especially when working. He has lost significant strength, motion, and dexterity with the hand and, because of nerve damage, cannot sense temperatures with the hand. At his doctor's recommendation, he now wears a brace when working and is restricted from lifting moderate to heavy objects. His doctor anticipates a high probability of degenerative arthritis in the future in this hand. His past medical expenses for his hand were stipulated to be $31,825; plaintiff makes no claim for future medical expenses.

Because of his injury, plaintiff was, despite diligent efforts, unable to find employment following the accident, until July 1987, when he obtained a job from Edison Chouest as a hydraulic engineer aboard one of its vessels.[5] He had been making about $16,000 per year when he was working for A & P and is now making as much or more with Edison Chouest. Plaintiff makes no claim for loss of future income.

According to plaintiff, a witness the Court found most credible and a person his A & P supervisor called "an excellent worker," he did not notice before the accident that the eyebolt was not screwed in all the way. He knew it was improper to move the clutch unless the eyebolts were screwed in all the way, but stated that he had never removed any eyebolts from a

---

**5.** A Mr. Guidry of A & P appears to have offered plaintiff a job in December 1985 or January 1986 on the condition that he not sue A & P or Twin Disc. The Court finds this condition unreasonable and notes that Mr. Guidry was not called to rebut this assertion by plaintiff. Mr. Trosclair's testimony on the issue was insufficient, in the Court's opinion, to carry the preponderance of the evidence on this point.

clutch and had never seen any bent or broken eyebolts or any clutches without eyebolts in place. He stated that he did not specifically check for unscrewed eyebolts, but added that he would have definitely noticed if the eyebolt had not been screwed in all the way. Plaintiff admits that he is still not sure, of his own knowledge, what exactly happened in that brief, traumatic period when the clutch fell.

■ The controversy in the case centered over what caused the eyebolt to pop out of the clutch housing. After the accident, the bottom two to three threads of the eyebolt that popped out from the clutch were damaged, as were the top two to three or perhaps four threads in the clutch housing; the eyebolt was discovered to be rusty. On the one hand, plaintiff argued that the clutch/eyebolt system was defectively designed and suggested that the eyebolt's rusty condition prevented it from providing adequate support to hold the clutch. On the other hand, Twin Disc argued that the eyebolt popped out because, contrary to proper use, the eyebolt had not been screwed in all way. As explained below, the Court finds plaintiff's version to carry the preponderance of the evidence.

Although Twin Disc presented certain inconclusive evidence that the eyebolt in question was not manufactured by Twin Disc, it offered nothing to rebut the testimony of Jimmy Griffin, A & P's head mechanic, that A & P only used Twin Disc parts for its clutch systems. The Court finds that the eyebolt in question was manufactured by Twin Disc.

Of all the A & P employees who testified, only Mr. Griffin had ever seen a damaged eyebolt before the accident. Like plaintiff, Scott Danos, an A & P welder, testified that he had never seen any eyebolts removed from any clutches. Mr. Griffin testified that A & P never formally instructed its mechanics to check eyebolts before moving a clutch, but plaintiff's direct supervisor, Gerald Dantin, testified that all A & P mechanics "knew" that the eyebolts should be screwed in all the way before a clutch was moved.

Mr. Dantin kept the eyebolt in his office for a few days after the accident until he gave it to either the photographer, Jim Hebert, or to Mr. Griffin. At trial, Mr. Dantin testified that he examined the eyebolt and housing; in his deposition, however, he testified that all his knowledge about the eyebolt and housing came from Mr. Griffin. At trial, Mr. Dantin testified that, in his opinion based on his independent knowledge, the eyebolt came out from not being screwed in all the way; the Court, however, finds his opinion not credible, or at least not supportable, for his deposition testimony impeached his assertion of any independent knowledge.

Mr. Griffin testified that after the accident, he inserted the rusty eyebolt into the housing and lifted it without a problem. At trial, he stated he had to re-tap the housing; in his deposition, however, he stated the opposite. Further, at trial, he stated he did not remove the other eyebolt on the housing, while in his deposition, he stated the opposite. Because of these many conflicts, the Court did not find Mr. Griffin's testimony about the eyebolt and the accident to be credible.

Bruce Arnold, Twin Disc's chief engineer of its marine department, was familiar with the clutch and eyebolt system. He stated that its clutches were designed with knowledge that they would be used in salt water environments and would be frequently removed from vessels. He stated that for proper use, an eyebolt should be screwed all the way into its clutch housing for two reasons: (1) to provide maximum support of the screw threads against the clutch housing and (2) to create a vacuum seal that would prevent the eyebolt from coming loose. He admitted there would be no reason to keep eyebolts not screwed in all the way in the clutch housing and that if an eyebolt loosened only one twist in the housing, it could then rust. He further stated that Twin Disc supplied clutches with the eyebolts screwed into the housing. He admitted that the eyebolt could be permanently secured to the housing, but stated that one reason this was not done was to provide easy removal of the bolt if it happened to get bent or broken. In his opinion, the

eyebolt was not screwed securely into the housing and would not have pulled out if it had been securely seated.

Based on all the evidence, the Court finds that it was established by a preponderance of the evidence that the eyebolt in question was screwed down all the way in the clutch housing and that it pulled out due to its rusty condition.

### B.

Admiralty law recognizes products liability. *East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 861, 106 S.Ct. 2295, 2299, 90 L.Ed.2d 865 (1986); *Vickers v. Chiles Drilling Co.,* 822 F.2d 535, 538–39 (5th Cir.1987).

Plaintiff seeks recovery on two theories. First, he contends that the clutch and eyebolt were defective and unreasonably dangerous in normal use because they lacked adequate warning about their use, capacity, and limitations. Second, he contends that the defendant's negligence in failing to use a safer, feasible alternative design of the clutch and eyebolt was a proximate cause of the accident.

■ The Court concludes that the clutch was being used in its "normal use" and that it was unreasonably dangerous in that Twin Disc, knowing that such clutches are used in salt water environments and are lifted frequently, should have either permanently secured the eyebolts to the clutch housing or warned users to check the eyebolt threads periodically for rust. This design defect, or, stated another way, Twin Disc's negligence, was the proximate cause of plaintiff's accident.

Twin Disc's theory is unsupported by the preponderance of the evidence. Further, it is, of itself, inconsistent; if there is no reason to have the eyebolt unscrewed and if a vacuum seals the eyebolt in place and prevents loosening, then there could be little room to presume the eyebolt at issue was in fact not screwed in all the way and vacuum-sealed; either the vacuum-seal does not work in the manner Mr. Arnold suggested, or eyebolts are occasionally unscrewed—either of which occurrence could, as Mr. Arnold admitted, permit unwanted rusting. While the Court acknowledges that the thread damage could suggest the eyebolt at issue was screwed in but two to three of the dozen possible turns, the Court may not surmise on exactly why the damage was limited to the outer threads, especially in light of the inference from plaintiff's credible testimony that the bold was screwed in all the way. Perhaps, it is not insignificant that Twin Disc did no tests with the actual bolt at issue to show that it could in fact support a clutch when it is screwed in all the way.

■ The Court finds no negligence on the part of plaintiff. While the Court does not believe the jury's finding that A & P was 25% responsible to be wholly without foundation or without substantial evidence, the Court believes that A & P did not commit any negligence that was a proximate cause of the accident; any lack of proper training on A & P's part to institute a formal program for its mechanics to inspect eyebolts before lifting a clutch was, in the Court's opinion, not a proximate cause of this accident, for the Court finds the eyebolt at issue to have been screwed in all the way. The Court simply notes that this difference of opinion is wholly immaterial inasmuch as Twin Disc and A & P would be joint and several tortfeasors; plaintiff may collect his entire damages from Twin Disc.[6] *See* LHWCA § 33(a), 33 U.S.C. § 933(a).

---

**6.** The Court initially questioned whether plaintiff's award on the jury verdict should be reduced by 25% in light of the jury's finding that A & P was 25% responsible for the accident. *See Hernandez v. M/V RAJAAN,* 841 F.2d 582, 591 (5th Cir.1988) (plaintiff's award against non-settling defendant was reduced by the settlement amounts he received from third-party defendants); *Leger v. Drilling Well Control, Inc.,* 592 F.2d 1246 (5th Cir.1979) (where plaintiff settled with certain defendants, the total damage award against the non-settling defendant was reduced to its percentage of the fault). The Court now holds that no reduction is due, for the rule in these two cases does not apply here. Plaintiffs dismissed their claims against A & P; they did not settle them. The sole settlement was between and among plaintiffs, the worker's comp intervenor, and *Twin Disc* and only concerned the *intervention* claim.

In determining the amount of damages, the Court finds that the jury's award of $200,000 is supported by a preponderance of the evidence. The sum equals $31,825 for stipulated medical expenses, about $32,000 for about two years of past lost earnings, and about $136,175 for past and future pain, suffering, disability, and anguish. Exercising its discretion, the Court wholly adopts the jury's $200,000 award. *See In re Incident Aboard D/B Ocean King*, 758 F.2d 1063, 1071 (5th Cir.1985) (citing *Wynn Oil Co. v. Purolator Chemical Corp.*, 536 F.2d 84, 86 (5th Cir.1976)).

## IV.

One final issue remains: pre-judgment interest. Were it not for this single issue, the ruling in Part II would be unnecessary, for as shown in Part III, the Court would rule just as the jury did (with the one minor, immaterial difference on the negligence by A & P). But as explained below, the award of pre-judgment interest in this case turns wholly on whether the judgment is entered on the jury's verdict or on the Court's findings of fact and conclusions of law.

On the one hand, where a judgment in a maritime action is entered on a jury's verdict but the factual question of a plaintiff's entitlement to pre-judgment interest is not submitted to the jury, the Court does not have the authority to award such interest. *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1361 (5th Cir.1987) (citing *Havis v. Petroleum Helicopters, Inc.*, 664 F.2d 54 (5th Cir.1981)).

On the other hand, where a judgment in a maritime action is entered on the Court's findings, the award of pre-judgment "interest, although within the Court's sound discretion, is well-nigh automatic." *Masters v. Transworld Drilling Co.*, 688 F.2d 1013, 1014 (5th Cir.1982) (per curiam). A trial court has the discretion to deny pre-judgment interest only where peculiar circumstances would make such an award inequitable. *Reeled Tubing, Inc. v. M/V CHAD G*, 794 F.2d 1026, 1028 (5th Cir. 1986) (citing *Inland Oil & Transport Co. v. Ark-White Towing Co.*, 696 F.2d 321, 327 (5th Cir.1983)). Further, pre-judgment interest is ordinarily awarded from the date of loss. *Id.* (citing *Platoro Ltd. v. Unidentified Remains of a Vessel*, 695 F.2d 893, 906–07 (5th Cir.), *cert. denied sub nom. Texas v. Platoro Ltd.*, 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983)).

Were judgment to be entered on the Court's findings, the Court would award pre-judgment interest from the date of loss because the Court finds no "peculiar circumstances" for departing from the norm[7] and would hold that the pre-judgment interest, like the post-judgment interest, be paid at the rate established by 28 U.S.C. § 1961 for the date of judgment. *See id.* at 1029. But because, as explained in Part II, the judgment in this matter is to be entered on the jury's verdict, interest must run from the date of judgment.

## V.

Accordingly, the Clerk of Court is directed to enter judgment in favor of plaintiff Edward Forbes and against Twin Disc in the amount of $200,000, with interest to

---

The Court adds that § 5(a) of the LHWCA, 33 U.S.C. § 905(a), prohibits claims of contribution-in-tort to Twin Disc from A & P. *White v. Texas Eastern Transmission Corp.*, 512 F.2d 486 (5th Cir.1975) (affirming dismissal of manufacturer's contribution claims against employer of injured employee), *cert. denied sub nom. Bettis Corp. v. Charles Wheatley Co.*, 423 U.S. 1049, 96 S.Ct. 776, 46 L.Ed.2d 638 (1976); *see also Ketchum v. Gulf Oil Corp.*, 798 F.2d 159 (5th Cir. 1986) (reaffirming the rule, following *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1983)).

7. Of course, the award of pre-judgment interest is limited to damages accrued prior to the entry of judgment. *See Richendollar v. Diamond M Drilling Co.*, 784 F.2d 580, 588 (5th Cir.1986), *reh'g en banc on other grounds*, 819 F.2d 124 (5th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987). While allocations between past and future pain and suffering award defy precise quantitative calculation, the Court finds $50,000 of the pain and suffering damages should be for future damages. Thus, pre-judgment interest would apply to only $150,000 of the award to plaintiff, and to only $18,750 of National Union's intervention award.

run from date of judgment and Twin Disc to bear all costs.[8]

---

**8.** The Clerk is further directed to enter judgment disposing of the remaining claims, which were either settled or voluntarily dismissed; specifically, the judgment is to recognize the intervenor's stipulated claim for $25,000, to dismiss with prejudice plaintiffs' claims against A & P, Camcraft, and National Union, plaintiff Ramona Forbes' claim against Twin Disc, and Twin Disc's cross-claim against A & P. As to these remaining claims, each party is to bear its own costs.