Carolynn Anne STANLEY, Plaintiff,

v.

BERTRAM–TROJAN, INC., d/b/a
Bertram Yacht Corp.,
Defendants.

No. 89 CIV. 8160 (JGK).

United States District Court,
S.D. New York.

Nov. 8, 1994.

542

Michael J. Pangia, Gilman, Olson & Pangia, Washington, DC, for Carolynn Anne Stanley.

James S. McMahon, Bigham Englar Jones & Houston, New York City, for Island Records Inc.

Charles B., Milgrim Thomajan & Lee P.C., New York City, for Chris Blackwell.

*OPINION*

KOELTL, District Judge:

The plaintiff in this case, Carolynn Anne Stanley, commenced this products liability and negligence action in June, 1989 against the defendant Bertram Trojan, Inc. This is a maritime case in which both admiralty and diversity jurisdiction are asserted. The jury rendered a special verdict for the plaintiff, particularizing damages in the amount of $1,267,000.00, consisting of medical expenses, pain and suffering, and loss of earnings, with each category divided between damages to date and future damages. The award was subject to a thirty percent reduction because the jury apportioned thirty percent of the fault to a former party to the action, Christopher Blackwell. *See Stanley v. Bertram–Trojan, Inc.,* 781 F.Supp. 218 (S.D.N.Y.1991) (Mukasey, J.) and *see generally McDermott, Inc. v. AmClyde,* —— U.S. ——, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994). The jury found no fault by the plaintiff. Therefore, the defendant's liability amounts to $886,900.

The parties have made several applications to the Court regarding issues in connection with the judgment to be entered. The issues include: first, whether the collateral source rule applies; second, whether Section 5041 of the New York CPLR applies with respect to a portion of future damages; and third, whether the plaintiff is entitled to pre-judgment interest.

I. *The Collateral Source Rule*

The defendant has argued that because the plaintiff, in bringing her claim, has relied on both the Court's admiralty jurisdiction and its diversity jurisdiction, New York law—specifically New York CPLR Section 4545(c)—applies and requires the Court to reduce the amount of the award for the plaintiff by any payments that the plaintiff has received, or with reasonable certainty will receive, from collateral sources such as insurance for medical and other expenses incurred, minus an amount equal to certain past and future premiums paid or to be paid by the plaintiff. In essence, the defendant's argument is that the collateral source rule, which prohibits such setoffs, does not apply in this case.

Despite the complexity of the role of state law in admiralty, several themes in the Supreme Court's jurisprudence are clear. First, the concern for the development of a uniform body of maritime law is pervasive. *See, e.g., Southern Pacific Co. v. Jensen,* 244 U.S. 205, 218, 37 S.Ct. 524, 529–30, 61 L.Ed. 1086 (1917) (New York workmen's compensation statute held not applicable to maritime claim). This pervasive concern for uniformity in admiralty law exists even if jurisdiction is grounded on diversity as well as admiralty. *See, e.g., Pope v. Talbot,* 346 U.S. 406, 409–11, 74 S.Ct. 202, 204–06, 98 L.Ed. 143 (1953) (pursuant to admiralty rule, plaintiff's negligence only reduced damages, and Pennsylvania's contributory negligence rule, which completely barred a negligent plaintiff from recovering, did not apply in maritime case). Second, the preference for uniformity does not totally preclude the application of state law in the appropriate circumstances. *See, e.g., Kossick v. United Fruit Co.,* 365 U.S. 731, 738–39, 742, 81 S.Ct. 886, 891–92, 894, 6 L.Ed.2d 56 (1961) (explaining that the determination of whether to apply state law in admiralty involves an accommodation of interests and holding that the New York stat-

ute of frauds did not apply to maritime contract). Accordingly, state law applies where no applicable admiralty rule exists, where local and state interests predominate and where the uniformity principle is not crucial. T.J. SCHOENBAUM, 1 ADMIRALTY AND MARITIME LAW 143–44 (2d ed. 1994). State law also applies where it supplements, but does not contradict, an admiralty rule that does not constitute a pervasive system. *Id.* at 145.

■ The collateral source rule applies as a matter of federal law and therefore applies in admiralty cases. *See, e.g., Thyssen, Inc. v. S/S Eurounity,* 21 F.3d 533, 537–38 (2d Cir. 1994) (collateral source rule applies in COG-SA cases); *Gypsum Carrier, Inc. v. Handelsman,* 307 F.2d 525, 535 (9th Cir.1962) (holding that Jones Act recovery was not subject to reduction by amount of unemployment benefits received and noting that federal courts recognize the collateral source rule as a "generally prevailing" federal rule); *Perry v. Metro–North Commuter R.R.,* 716 F.Supp. 61, 62 (D.Conn.1989) (collateral source rule applies in FELA cases).

The absence of cases in which a court has applied the collateral source rule to a claim brought under maritime law, where the court's diversity jurisdiction also was invoked, requires this Court to evaluate the importance of achieving and maintaining uniformity in maritime law in the context of applying the collateral source rule.

■ Even though a maritime claim includes a diversity basis for jurisdiction, the parties' rights and liabilities are controlled by federal principles of maritime law. *Neal v. McGinnis, Inc.,* 716 F.Supp. 996, 998 (E.D.Ky.1989).

Neither party has been able to cite a case, and we are aware of none, where the court's admiralty and diversity jurisdiction were involved and a state rule was applied to overrule the general federal rule—applicable in admiralty cases—that the collateral source rule applies. The need for uniformity in admiralty law, and the consistent pattern of cases that recognize the application of admiralty law to the issues of liability and damages to make the plaintiff whole, argue

strongly that federal and not state law controls the application of the collateral source rule.

For example, in *Carey v. Bahama Cruise Lines,* 864 F.2d 201 (1st Cir.1988), the Court of Appeals for the First Circuit held that the district court erred in applying the Massachusetts rule of comparative negligence (that bars recovery by a plaintiff who is more that fifty percent at fault), instead of the maritime rule (that reduces the plaintiff's damages by the percentage of the plaintiff's fault, but does not bar recovery). The court found the two rules totally incompatible. *Id.* at 207–08. The court noted that "the source of subject matter jurisdiction is not always dispositive of the substantive law that governs the case" and that "[t]he mere fact that the plaintiffs invoked the diversity of citizenship jurisdiction of the district court does not preclude the application of maritime law." *Id.* at 206.

Similarly, in *Robinson v. Pocahontas, Inc.,* 477 F.2d 1048 (1st Cir.1973), the Court of Appeals for the First Circuit explained that the federal admiralty rule, under which an award of pre-judgment interest falls within the discretion of the trier of fact, and not the state pre-judgment interest statute, applied in a diversity case where the plaintiff pursued claims under maritime law. The court reasoned:

'The fortuitous circumstance that in the present case there was diversity of citizenship between the parties plaintiff and defendant may give an added basis for jurisdiction in the federal district court[....] But whether such diversity existed or not, it is still true that the substantive law to be applied in determining both liability and the amount of damages to be embodied in the money judgment is federal law, not state law.'

*Id.* at 1053 (citing *Moore–McCormack Lines, Inc. v. Amirault,* 202 F.2d 893, 896–97 (1st Cir.1953)).

The defendant's reliance on *Staffer v. Bouchard Transp. Co.,* 878 F.2d 638 (2d Cir. 1989), in support of its argument that the collateral source rule does not apply, is misplaced. In *Staffer,* an employee had sued his employer, Bouchard, under the Jones Act, for injuries he suffered while working as a

deckhand. Bouchard then brought a third party claim for contribution against the doctor who treated the employee, claiming that his malpractice aggravated the employee's injuries. The issue of setoff was raised in *Staffer* when the doctor claimed that he should be able to set off from the judgment against him and in favor of the employer (i.e., the contribution action) amounts that the employee had received in maintenance and cure, and social security benefits. The court held that the doctor could not offset against the judgment against him any payments from collateral sources that Staffer had received because, by their terms, Sections 4545(a) and (c) of the New York CPLR did not apply. Section 4545(a) provides, in relevant part:

> In any action for medical ... malpractice where the plaintiff seeks to recover for the cost of medical care, ... loss of earnings or other economic loss, evidence shall be admissible for consideration by the court to establish that any such past or future cost or expense was or will, with reasonable certainty, be replaced or indemnified, in whole or in part, from any collateral source.... If the court finds that any such cost or expense was or will, with reasonable certainty, be replaced or indemnified from any collateral source, it shall reduce the amount of the award by such finding ... [.]

N.Y.Civ.Prac.L. & R. 4545(a). Section 4545(c) uses almost identical language and applies to claims for personal injury, injury to property and wrongful death actions. *See* N.Y.Civ.Prac.L. & R. 4545(c).

The Court of Appeals in *Staffer* found that both provisions of Section 4545 were inapplicable to the third party claim between the employer and the doctor. The employer was not a plaintiff in either a malpractice action or a personal injury action; rather, the employer's claim was one for contribution. 878 F.2d at 645. *Staffer* found that Section 4545 did *not* apply in that case and thus is *not* authority for a decision that Section 4545

*does apply* in this case. Because Section 4545 did not apply in *Staffer*, the Court of Appeals did not have to address, and did not address, the situation here where federal law governs the claim, federal law provides a collateral source rule and that rule is different from the one provided by state law. *Staffer*, therefore, is not authority for the application of New York's collateral source rule, rather than the federal admiralty rule, in this case.

■ Finally, Section 4545, which the defendant asks the Court to apply, would not apply even if state law were applied based on diversity. In a diversity case, this Court would apply state law including state conflicts of law principles. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Aro-Chem Int'l Inc. v. Buirkle*, 968 F.2d 266, 269–70 (2d Cir.1992). In this case, the plaintiff is a resident of Virginia, the defendant is a Florida corporation and the accident occurred in navigable waters off the Bahamas. A New York court applying New York's conflicts of law principles would not apply Section 4545 of the New York CPLR and thus there is no basis for applying it here.[1]

For all of the foregoing reasons, the Court will apply the collateral source rule, as it is applied in admiralty, and will not offset from the judgment any payment that the plaintiff may have received, or may receive in the future, from collateral sources.

II. *Article 50B of the New York CPLR*

■ While the defendant argues that Section 5041 of the New York CPLR should be applied to this case, that section plainly does not apply. Section 5041 provides for the manner in which judgment is to be entered in an action for personal injury, injury to property or wrongful death. It provides specific rules for awards of future damages in excess of two hundred fifty thousand dollars. For all of the reasons discussed above

---

1. Under the choice of law analysis articulated in *Neumeier v. Kuehner*, 31 N.Y.2d 121, 286 N.E.2d 454, 335 N.Y.S.2d 64 (1972), it is clear that a New York court would not find that New York has sufficient interest in the application of its collateral source rule to apply it to the facts of

this case. *See, e.g., Pascente v. Pascente*, No. 91 Civ. 8104, 1993 WL 43502, *2 (S.D.N.Y. Feb. 16, 1993) (Sotomayor, J.) (applying New York's choice of law principles to the facts of the case and determining that New York's collateral source rule did not apply).

which require a uniform federal admiralty law for the determination of the substantive rules of liability and damages, there is no basis to apply Section 5041 in this case. Moreover, the rules set out in Section 5041 would be inconsistent with the detailed instructions that the jury was given at trial—at the defendant's specific request—on how to calculate present value. Those instructions were not only requested by the defendant, they also were consistent with the directions by the Court of Appeals for the Second Circuit with respect to how present value is to be calculated. *See, e.g., Oliveri v. Delta S.S. Lines, Inc.,* 849 F.2d 742, 747–752 (2d Cir. 1988).

The defendant, in support of its argument that Section 5041 applies to "federal" cases, directs the court to *In re Joint E. & So. Dists. Asbestos Litig.,* 798 F.Supp. 940 (E. & S.D.N.Y.1992), *rev'd on other grounds,* 995 F.2d 343 (2d Cir.), *and rev'd on other grounds sub nom., Malcolm v. National Gypsum Co.,* 995 F.2d 346 (2d Cir.1993) However, that case was a diversity case that did not involve claims brought under federal law.

Moreover, Section 5041 does not apply by its very terms. Subsection (e), which dictates how awards of future damages exceeding two hundred fifty thousand dollars should be reduced to judgment, requires, among other things, that "the period of time over which ... periodic payments shall be made and the period of time used to calculate the present value of the annuity contract shall be the period of years determined by the trier of fact in arriving at the itemized verdict[.]" N.Y.Civ.Prac.L & R. 4545. Not only was this issue never submitted to the jury, the applicability of this statute was never mentioned. The defendant cannot argue for the application of a provision that requires findings by the jury that it never requested the jury to make.

III. *Pre-judgment Interest*

■ The plaintiff argues that she is entitled to pre-judgment interest on her damages to date ($428,400) under the general maritime law according to which pre-judgment interest should be granted unless there are exceptional circumstances. *See, e.g., Magee v. United States Lines, Inc.,* 976 F.2d 821, 823 (2d Cir.1992). However, where the plaintiff tries its case to a jury and fails, as in this case, to ask that the issue be presented to the jury, it forfeits any right it might have had to pre-judgment interest.[2] *See, e.g., Newburgh Land & Dock Co. v. Texas Co.,* 227 F.2d 732, 735 (2d Cir.1955) (L. Hand, J.) (modifying judgment by striking pre-judgment interest awarded by the court in maritime case tried to a jury noting that "[i]t is the federal law that in actions at law when the award of interest rests in discretion, it is the jury who must exercise it"); *Havis v. Petroleum Helicopters, Inc.,* 664 F.2d 54, 55 (5th Cir.1981) (while an admiralty court clearly has the power to award pre-judgment interest, where the case is submitted to a jury as the trier of fact and nothing is said about pre-judgment interest until after the jury is discharged, the plaintiff cannot recover pre-judgment interest); *Forbes v. A & P Boat Rentals, Inc.,* 689 F.Supp. 625, 633 (E.D.La.1988) (in maritime products liability case brought under the court's diversity jurisdiction, pre-judgment interest could not be awarded because "the factual question of [the] plaintiff's entitlement to pre-judgment interest [was] not submitted to the jury" and the court, therefore, did not have the authority to award such interest).

In the submissions that the plaintiff made in connection with entry of the judgment, the plaintiff did not dispute any of these cases or present any alleged basis for the Court to decide whether to award pre-judgment interest in this case although the case was tried to a jury. The plaintiff pointedly did not argue that she was entitled to pre-judgment interest because the parties had already agreed that she was, or that the parties had agreed that the Court should decide the issue of whether the plaintiff was entitled to pre-judgment interest. At oral argument, how-

**2.** All of the cases that the plaintiff cites in support of her argument that she is entitled to pre-judgment interest are either cases that were tried by the court, and not by a jury, or cases in which the parties otherwise agreed to have the court determine whether to award pre-judgment interest.

ever, the plaintiff argued, belatedly, that she had proffered a jury charge on interest to the defendant but that the defendant rejected it prior to trial on the grounds that it was wrong on the law and that the computation of interest, even if allowable, is not performed by the jury. The defendant responded, quite rightly, that the parties did discuss proposed charges extensively in the process of proposing both joint and individual charges to the Court, but that either side should have presented a charge to the Court if the party wanted the Court to instruct the jury on a particular issue. In her post-argument submission, the plaintiff argued that the parties had agreed to let the Court decide, after trial, the issue of pre-judgment interest.[3]

The correspondence now proffered by the plaintiff does not demonstrate that the parties ever reached an agreement on pre-judgment interest. Rather, the last document proffered by the plaintiff, a September 23, 1994 letter from her counsel to the Court, with a copy to counsel for the defendant, asserted her position shortly before trial that she was entitled to pre-judgment interest and expressed uncertainty "at this time whether it is a matter for the court or the jury to determine the rate of interest and the date it is to commence. . . ." The plaintiff has not demonstrated that the defendant agreed that the plaintiff was entitled to pre-judgment interest or that the parties agreed that the basic issue of entitlement would be decided by the Court.[4]

The parties submitted a single document to this Court during trial including all of the joint requests to charge, as well as all of the individual requests to charge by both the plaintiff and the defendant on which they could not agree, together with any objections they had to the charges offered by the other party. The plaintiff did not ask for a charge

on pre-judgment interest either on the basic question of whether she should be awarded pre-judgment interest or on what the terms of such pre-judgment interest should be. The Court not only gave the parties a complete draft of the charge one day in advance of when it was given to the jury and discussed the charge in detail with the parties, but the Court also explicitly and extensively ruled on each of the requests proffered by the parties. The plaintiff even submitted a supplemental charge on another subject shortly before the charge conference which the defendant objected to, but which the Court gave in substance. There was no request for a charge on pre-judgment interest and, since the Court was not the factfinder at trial, it cannot now enter pre-judgment interest. *See, e.g., Havis,* 664 F.2d at 55 (plaintiff could not recover pre-judgment interest where "[n]either the plaintiff nor the defendant presented any evidence or requested any jury instructions concerning interest"); *Parisi v. Lady in Blue, Inc.,* 433 F.Supp. 681, 683 (D.Mass.1977) (plaintiff could not recover pre-judgment interest where he requested it in his complaint, but did not request that the jury be instructed that it could, in its discretion, add pre-judgment interest to its award).

Pre-judgment interest will, therefore, not be included in the judgment.

A judgment will be entered that reflects the rulings explained above.

---

**3.** It is not clear if the plaintiff is asserting that the parties reached an agreement that the plaintiff was entitled to pre-judgment interest and that the Court would decide the rate and starting date or that the parties agreed that the very issue of whether the plaintiff was entitled to pre-judgment interest would be submitted to the Court.

**4.** Moreover, the fact that the plaintiff never argued to this Court, in its papers in connection with the judgment, that there was an agreement

on pre-judgment interest severely undermines the belated assertion that there was such an agreement. Finally, the correspondence does not support the argument—now raised for the first time by the plaintiff—that the defendant "waived" its right under longstanding authority to have the issue of entitlement to pre-judgment interest decided by a jury when the jury is the factfinder.